SARATOGA GENERAL TERM, November, 1849, *Paige, Willard, and Hand,* Justices.

## DOREMUS & NIXON *vs.* LEWIS & OSBORN.

Where an assignment for the benefit of creditors does not purport to convey all the assignor's property, and it does not appear on its face that there are other creditors of the assignor, not provided for; or that the value of the assigned property exceeds the amount of the preferred debts, the mere omission of the assignor to direct that any contingent surplus which may remain, after the payment of the preferred creditors, shall be applied in payment of his other creditors, will not render the assignment void on its face.

But if it can be shown that the assigned property exceeds in value the amount of the debts preferred, or that the assignor, at the time of the execution of the assignment, contemplated a surplus, which would revert to him after the payment of the preferred debts, the assignment will be fraudulent and void.

Where a plaintiff, in his reply, denies particularly all knowledge of each allegation of new matter in the defendant's answer, sufficient to form a belief, this, within the meaning and intent of sections 131, 144, and 205, of the code of 1848, is a sufficient denial of the new matter in the answer to join an issue of fact, upon such new matter.

THIS was a complaint in the nature of a creditor's bill, founded upon a judgment against the defendant Lewis, and execution thereon returned unsatisfied. It was exhibited more particularly to set aside an assignment made by Lewis, on the second of October, 1848, to the defendant Osborn, of certain personal property mentioned therein, in trust, to pay certain creditors therein specified. The assignment conveyed to the assignee all the goods, &c. in the store of the assignor, together with all his notes, accounts, &c. in trust to convert the same into money, and to pay the proceeds to certain creditors of the assignor, named in a schedule annexed, but omitted to make any provision for the other creditors of the assignor, or for the surplus of the property remaining after payment of the preferred creditors. It was alleged in the complaint that the assignment embraced all the property of the assignor, and that it was made with intent to hinder, delay, and defraud the creditors of the assignor. The defendants, in their answer, denied all fraudulent intent, and set up that the property assigned did not exceed

$800, and that the debts preferred amounted to over $1350. And they alledged that inasmuch as the whole property assigned was insufficient to pay all the debts preferred, and was so known to be at the time of the execution of the assignment, it was unnecessary to provide, in the assignment, for the payment of any surplus to the other creditors of the assignor. The plaintiffs, in their reply, said as to the new matter contained in the answer, that they were ignorant of the same, and had not sufficient knowledge thereof to form a belief. The defendants, in their answer, did not specifically deny the allegation in the complaint, that the assignment conveyed to the assignee all the property of the assignor. The cause was heard by Justice Willard, on the pleadings. He decided that the reply admitted the allegations of the new matter in the answer, and thereby raised an issue of law, in the same manner as if the plaintiffs had demurred. And he held that under that view of the subject the assignment could not be treated as fraudulent; and he denied so much of the prayer of the complaint as sought to set it aside for that cause, and dismissed the complaint as to the defendant Osborn, with costs; but gave judgment against the defendant Lewis, and directed a receiver of his property to be appointed. The case came before this court on an appeal by the plaintiffs from the part of the judgment in favor of the defendant Osborn.

The appellants made two points, upon the argument of the appeal. 1. That the assignment was void on its face; and being void, that it could not be aided by the explanatory matter contained in the answer. 2. That the facts stated in the answer were not admitted by the reply.

*By the Court,* PAIGE, P. J. The assignment in question does not purport to convey all the assignor's property. And it does not appear on its face that there are other creditors of the assignor not provided for, or that the value of the assigned property exceeds the amount of the preferred debts. But it is conceded by the pleadings that there were other creditors not provided for in the assignment, among whom were the plaintiffs,

and that the assignment embraced all the property of the assignor. And the question is presented, whether the omission of the assignor to direct that any contingent surplus which might remain after the payment of the preferred creditors, should be applied in payment of his other creditors, and allowing such surplus to result or revert to him, invalidated the assignment. If the assignor had expressly directed the assignee to pay or reconvey the surplus to him, it is conceded that the assignment would have been void on its face, and that it could not be made good by showing that there would be no surplus for the debtor after payment of the preferred creditors. Such an assignment has been pronounced void by both the supreme court and the court of appeals. (*Goodrich* v. *Downs*, 6 *Hill*, 438. · *Barney* v. *Griffin*, 2 *Comst.* 365.) In those cases considerable reliance seems to have been placed upon the express provision for a surplus, in the assignment. In *Goodrich* v. *Downs*, Bronson, J. says: "The parties to the assignment, after having expressly provided for a surplus, are not at liberty to say that such a state of things was not contemplated at the time the conveyance was made. They are estopped by the deed to deny it." He says: "The illegal trust is expressly declared by the deed. We see it on the face of the instrument, and no proof of extrinsic facts can obviate the difficulty." In *Barney* v. *Griffin*, that learned judge says: "The parties contemplated a surplus, and provided for it; and they are not now at liberty to say this was a mere form, which meant nothing. And although it should ultimately turn out that there is no surplus, still, the illegal purpose which destroys the deed is plainly written on the face of the instrument, and there is no way of getting rid of it." And in *Boardman* v. *Halliday*, (10 *Paige*, 223,) the chancellor, who held an assignment void where the assignor empowered the assignees to give future preferences among certain of his creditors, seemed to rely upon the fact that the assignment showed that the assignor contemplated the possibility of there being more than sufficient property to pay all his debts, as an answer to the fact stated in the answer, that the assignees had ascertained that the assigned property was not sufficient to pay the creditors whom the assignor had

himself preferred.   In *Grover* v. *Wakeman,* in the court of errors, (11 *Wend.* 193,) Sutherland, J. says: " A fraudulent intent is never to be presumed; and where an instrument is ambiguous in its terms, and admits of two constructions, that interpretation shall be given to it which will render it legal and operative, rather than that which will render it illegal and void."   These authorities seem to warrant the conclusion at which Justice Willard arrived, that the assignment in this case was not void on its face.   If it could be shown, however, that the assigned property exceeded in value the amount of the debts preferred; or that the assignor, at the time of the execution of the assignment, contemplated a surplus, which would revert to him after the payment of the preferred debts, the assignment ought to be declared fraudulent and void.

Every estate or interest not embraced in the trust, and not otherwise disposed of, remains in or reverts to the person creating the trust.   (2 *R. S.* 729, § 62.)   And independently of the revised statutes the trustees only take that quantity of interest which the purposes of the trust require.   At common law, when a legal estate is conveyed in trust, and a trust is declared only as to a part of the interest in the property, what remains undisposed of results to the real owner.   So whenever the purposes of the trust are satisfied, a trust immediately results to the grantor. (*Cruise, tit. Trust, ch.* 1, §§ 37, 38.   5 *John.* 335, 345.)

If the assignor, in this case, at the time of the execution of the assignment, contemplated a surplus which would revert or result to him, the assignment will come within the first section of the 2d title of the chapter of the revised statutes relative to fraudulent conveyances; which declares all conveyances of goods, chattels or things in action, made in trust for the use of the assignor, void as against creditors.   The expectation of a surplus, without devoting it to the payment of his debts, would also be evidence of an intent to hinder, delay, or defraud creditors.   To make a valid assignment, the assignor must devote the whole of the property assigned, absolutely, to the benefit of his creditors, without any reservations, either express or implied, for his own advantage.   He must relinquish all control over and

interest in the property; and must not make the assignment the instrument of placing the property, or any part of it, beyond the reach of his creditors, or of securing therein a benefit, either immediate or remote, for himself. (11 *Wend*. 194, 5, 200, *per Sutherland, J.*)

The answer sets up facts which negate the idea of the expectation of any surplus at the time of the execution of the assignment. It states that the property assigned was less in value than the amount of the preferred debts, and that this was known and understood at the time of making the assignment.

The remaining question to be considered is, whether the new facts contained in the answer are admitted by the reply. The plaintiffs, in their reply, state that they are ignorant of the facts contained in the answer, and have not sufficient knowledge thereof to form a belief. The code of 1848, (§ 131,) declares that when the answer shall contain new matter, the plaintiff may, within twenty days, reply to it, denying particularly each allegation controverted by him, or any knowledge thereof, sufficient to form a belief. And section 144 provides that every material allegation of new matter in the answer, not specifically controverted by the reply as prescribed in section 131, shall, for the purposes of the action, by taken as true. What is here meant by the words "not specifically controverted by the reply," as prescribed in section 131? Section 131 allows the plaintiff to reply to new matter in the answer, by denying particularly each allegation controverted by him, or any knowledge thereof, sufficient to form a belief. The latter clause, by inserting the words which are understood, will read as follows: "The plaintiff may reply to the new matter contained in the answer, by denying particularly any knowledge of each allegation controverted by him, sufficient to form a belief." It seems to me if the plaintiff denies particularly all knowledge of each allegation of new matter in the answer, sufficient to form a belief, that this, within the meaning and intent of sections 131 and 144, is a sufficient denial of the new matter in the answer to join an issue of fact, upon such new matter. Unless we give this construction to these sections, all that part of section 131 in relation

to a denial of knowledge of the allegations in the answer suffi-
cient to form a belief, must be regarded as surplusage.   For if
the design of the plaintiff was merely to join an issue of law
upon the allegations in the answer, he should have withheld his
reply altogether.   In that case an issue of law would have arisen
on the answer, according to section 204, as there would have
been allegations of fact in the answer, the truth of which was
not controverted by the plaintiff.   Section 205, which declares
that an issue of fact arises, upon new matter in the answer con-
troverted by the reply, is to be construed in connection with sec-
tions 131 and 144, and is to be understood as referring to new
matter in the answer, controverted by the reply, as prescribed
in section 131, which may be by a denial of any knowledge of
the new matter sufficient to form a belief.   It is a fundamental
principle, in the construction of a statute, that it should be so
construed, that if it can be prevented, no clause, sentence or
word, shall be superfluous, void, or insignificant.   (*Bac. Ab.
Stat.* I, 2.)   If the construction contended for by the counsel of
the respondents is adopted, that part of section 131, in relation
to the denial of knowledge sufficient to form a belief, will be
rendered altogether *superfluous and void.*   The words of a
statute are to be understood according to their natural and ob-
vious signification and import, unless by such exposition a con-
tradiction or inconsistency will arise in the statute, by reason of
some subsequent clause from whence it may be inferred that
the intent of the legislature was otherwise.   (*Bac. Ab. Stat.* I,
2.   1 *Comst.* 180.)

In this case, in my judgment, if we adhere to the natural and
obvious signification and import of the language of sections 131,
144 and 205, of the code of 1848, construed together, we must
decide that a specific denial of new matter in an answer, suffi-
cient to form a belief, presents a case of new matter in an an-
swer controverted by the reply, and creates an issue of fact as
to such new matter, within the meaning of section 205.   Such
a construction is not incompatible or inconsistent with any part
of the code, but is in harmony with, and gives effect to, all

the other sections of the code, in relation to the same subject matter.

I have, therefore, come to the conclusion, upon this part of the case, that the reply of the plaintiffs did not admit the allegations in the answer, but joined an issue of fact thereon, which must *go down* to the circuit to be tried as such.

As the plaintiffs have failed in showing that the judgment is erroneous, so far as it relates to the issue of law as to the invalidity of the assignment, on its face, independent of the questions of fact in relation to the excess of the value of the assigned property above the amount of the preferred debts, and the expectation of a surplus by the assignor at the time of the execution of the assignment, I think this is not a case in which costs of the appeal should be allowed to the appellants.

The judgment rendered in favor of the defendant Osborn must be reversed, without costs to either party, and a rule must be entered directing the issues of fact joined between the plaintiffs and the defendant Osborn to be tried at a circuit court in the county of Saratoga.

---

SAME TERM.    *Before the same Justices.*